UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 25-cv-25734

JANICE CRUSE-SANCHEZ,

    Plaintiff,
v.

THE SCHOOL BOARD OF MIAMI-DADE
COUNTY, FLORIDA,

    Defendant.
_____/

## SCHOOL BOARD'S MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT

Defendant, The School Board of Miami-Dade County, Florida ("School Board"), through the undersigned counsel and pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, hereby files this Motion to Dismiss Plaintiff's Second Amended Complaint and as grounds states as follows:

**I.    INTRODUCTION**

This action was commenced on June 24, 2025, when the Plaintiff filed her Complaint in the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County, Florida. The Complaint was served on the School Board on June 30, 2025.

The Complaint contained four counts under the Florida Civil Rights Act ("FCRA"):

    Count I – Race and Color Discrimination in Violation of the FCRA;

    Count II - National Origin Discrimination in Violation of the FCRA;

    Count III – Retaliation in Violation of the FCRA; and

    Count IV – Hostile Work Environment in Violation of the FCRA.

Plaintiff alleges in Paragraph 8 of her original complaint (filed in state court) that she "timely" filed a charge of discrimination with the EEOC and Florida Commission of Human Relations ("FCHR"). The Charge was filed with the EEOC and FCHR on August 20, 2024. See Exhibit A to Notice of Removal, pp. 8, 33-24. [DE 1, Exhibit A].

On July 21, 2025, the School Board filed a Motion to Dismiss Plaintiff's Complaint for Failure to State a Claim and/or for More Definite Statement. This Motion was heard by Circuit Court Judge Peter R. Lopez on November 18, 2025. On November 20, 2025, Judge Lopez entered an Order dismissing the Complaint without prejudice and gave Plaintiff fifteen (15) days to file an amended complaint. The School Board argued before Judge Lopez *inter alia* that (1) most of the adverse employment actions she was claiming were time barred under the FCRA; (2) Plaintiff had failed to sufficiently plead facts that showed she engaged in protected activity; and (3) Plaintiff had failed to sufficiently plead a claim of hostile work environment since she omitted describing it in her EEOC charge and her complaint.

With these deficiencies having been identified clearly to the Plaintiff, on November 23, 2025, Plaintiff filed her First Amended Complaint. Plaintiff abandoned her FCRA claims entirely, and asserted the following claims under 42 U.S.C. §1981:

> Count I – Race, Color and National Origin Discrimination under 42 U.S.C. §1981;
>
> Count II – Hostile Work Environment under 42 U.S.C. §1981; and
>
> Count III – Retaliation under 42 U.S.C. §1981.

The First Amended Complaint consisted of 35 paragraphs followed by a prayer for relief. It appears that Plaintiff abandoned the FCRA because of the timeliness issue raised by the School Board in its initial motion to dismiss.

On December 8, 2025, the School Board removed this action to the present Federal court. On the same date the School Board filed a Motion to Dismiss Plaintiff's First Amended Complaint or for More Definite Statement. [DE 4]. That Motion was granted in part on January 8, 2026, wherein the Court dismissed all the claims without prejudice giving the Plaintiff twenty-one days to file an amended complaint addressing the deficiencies outlined in the Court's Order. [DE 16].

In that Order the Court highlighted two (2) primary deficiencies in the First Amended Complaint: (1) that Plaintiff did not sufficiently alleged and describe the protected activity she claims her retaliation claim was based on and (2) that Plaintiff failed to cite 42 U.S.C. §1983 when bringing her §1981 claims. [DE 16].

Plaintiff filed her Second Amended Complaint on January 28, 2026. This version of the Complaint asserts the same three causes of action. The Second Amended Complaint cites §1983, however it still lacks the requisite allegations that Plaintiff was injured by a policy or custom of the School Board. The Second Amended Complaint costs of 61 paragraphs, however the added allegations are little more than window dressing and do not address the Court's concerns that, "As pled, Defendant is left to speculate as to what protected activity Plaintiff allegedly undertook. Furthermore, the facts necessary to identify the protected activity are within Plaintiff's knowledge, as Plaintiff herself allegedly opposed discriminatory employment practices. Thus, Plaintiff's argument that "discovery will reveal evidence supporting her claim" is unpersuasive."" (citations omitted) [DE 16, p. 7].[1] The Second Amended Complaint contains no further factual substantiation that any of Plaintiff's objections to employment actions taken by the School Board were protected activity. Finally, Plaintiff fails to adequately plead a cause of action for hostile work environment

---

[1] The bulk of the additional allegations can be found in ¶¶ 13-17 and 19-24 of the Second Amended Complaint. All these allegations do is further explain what DROP is, describe Plaintiff's participation in the program and add a list of three other employee's Plaintiff claims participated in DROP.

3

since the only workplace actions she describes are discrete employment actions which cannot form the basis of a hostile work environment.

## II. FACTUAL ALLEGATIONS AND BACKGROUND

The School Board is a government entity that operates Miami-Dade County Public Schools and employed the Plaintiff as a Region Administrative Director from approximately August of 2003 until her retirement from employment in September 2024.

According to the allegations in Plaintiff's First Amended Complaint, the alleged discriminatory and or retaliatory actions against her began on or about January 10, 2022. On that date she claims an adjustment to her salary was delayed. See 2nd Am. Comp. ¶ 17.

In April 2022, Plaintiff applied for an Assistant Superintendent position. Despite being one of three finalists for the position, she was not awarded the role. See 2nd Am. Comp. ¶ 18.

On or about July 2022, Plaintiff applied for another Assistant Superintendent position. The Plaintiff was not awarded this position. See 2nd Am. Comp. ¶ 25.

On or about August 8, 2022, Plaintiff was laterally transferred from the Central Region office to the North Region Office. Plaintiff immediately appealed this transfer, but was notified the transfer was final on or about August 12, 2022. See 2nd Am Comp. ¶¶ 26-27. This was the final action taken with respect to the terms and conditions of Plaintiff's employment until June 2024. See 2nd Am Comp. ¶ 30.

In 2023 the Florida Legislature made changes to the Deferred Retirement Option Program (DROP) within the Florida Retirement System. Pursuant to those changes, administrators teaching for a public school system could now participate in DROP for up to eight years (96 months) instead of the prior limit of five years (60 months). See (2022) Fla. Stat. §121.091(13)(b)(1.b); and (2024) Fla. Stat. §121.091(13)(b)(b).

On or about July 1, 2019, Plaintiff chose to participate in the DROP program. See 2nd Am. Comp. ¶¶ 13. Plaintiff apparently wished to extend her DROP period for an additional three (3) years, but was advised on or about June 9, 2024, that her request would not be granted and her employment ended on September 27, 2024. See 2nd Am. Comp. ¶¶ 30, 32.

### III.   LEGAL STANDARD

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for dismissal of a complaint when it fails to state a claim upon which relief can be granted. When ruling on a motion to dismiss under this rule, a court must accept all factual allegations as true and limit its consideration to the complaint, the exhibits attached thereto, documents incorporated therein by reference, and matters of which the court may take judicial notice. Paterakis v. School Dist. of Brevard County, Fla., 2009 WL 2423113 (M.D. Fla. 2009) (citing Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308 (2007), GSW, Inc. v. Long County, Ga., 999 F.2d 1508, 1510 (11th Cir. 1993)). However, this does not hold true for legal conclusions contained in the complaint. Id.

Pursuant to Rule 8(a)(2) of the Federal Rules of Civil Procedure, "[A] complaint must contain a short and plain statement of the claim showing that the pleader is entitled to relief." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). While a plaintiff need not provide detailed allegations, a plaintiff's complaint must provide "more than labels and conclusions." Id. at 555 (internal citations and quotations omitted). "[A] formulaic recitation of the elements of a cause of action will not do." Id. Rather, to survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead sufficient facts in her complaint to state a claim that is "plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

A complaint is also subject to dismissal under Rule 12(b)(6) when its allegations on their face-show that an affirmative defense bars recovery on the claim. LeFrere v. Quezada, 582 F.3d 1260,1263 (11th Cir. 2009); Marsh v. Butler County, 268 F.3d 1014, 1022 (11th Cir. 2001).

## IV.   ARGUMENT

### A. Plaintiff Has Failed to Plead That She Was Damaged by A Policy or Custom of the School Board

Plaintiff brings all three of her causes of action under §1981. However, Eleventh Circuit law clearly states that, where a plaintiff seeks vindication of rights secured by § 1981 against a state actor, §1983 provides the exclusive remedy for obtaining relief. Butts v. County of Volusia, 222 F.3d 891, 893 (11th Cir. 2000).

To be sure, the Supreme Court has held,

> "… that the express "action at law" provided by § 1983 for the "deprivation of any rights, privileges, or immunities secured by the Constitution and laws," provides the exclusive federal damages remedy for the violation of the rights guaranteed by § 1981 when the claim is pressed against a state actor."

Jett v. Dallas Indep. Sch. Dist., 491 U.S. 701, 735 (1989).

Plaintiff has corrected the earlier error in her First Amended Complaint, and now properly cites § 1983 in her Second Amended Complaint.  Nevertheless, mere citation to the proper statute is not enough to bring a viable claim.

The Supreme Court has also long held that, "… to prevail on [her] claim for damages against the school district, petitioner must show that the violation of [her] "right to make contracts" protected by § 1981 was caused by a custom or policy within the meaning of Monell and subsequent cases. Jett, 491 U.S. at 735-736 (referencing Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658, 690–91 (1978)).  The Court in Monell also held that municipalities cannot be held liable under §1983 simply because they employ a tortfeasor, eliminating liability

under *respondeat superior* theory. Monell, 436 U.S. at 691. It is only when the execution of a government entity's policy or custom inflicts injury on a plaintiff can a government entity be held liable under §1983. Id at 691, 694. Notably absent from Plaintiff's Second Amended Complaint is any allegation of the existence of any policy or custom of the School Board that caused her claimed injuries. This is astonishing considering the Court previously and *sua sponte* pointed Plaintiff in the correct direction. Even a cursory review of the § 1983 caselaw on the topic would have revealed this requirement. All Plaintiff's Second Amended Complaint has done is identify two potential tortfeasors against her – the exact type of *respondeat superior* claim prohibited by §1983. See 2nd Am. Compl. ¶10. Despite having had the opportunity to twice plead claims under §1983, a "policy or custom" of the School Board that caused her injury has not even been mentioned. It would be reasonable for the Court to infer at this juncture that the reason it has not been plead is because such a policy or custom does not exist. Plaintiff has already had two opportunities to make a claim (three if you count the state court complaint) and cannot. As such, all three of Plaintiff's §1981 claims must be dismissed with prejudice.

### B. Plaintiff Has Not Pled a Viable Retaliation Claim

Notwithstanding the above fatal deficiency with regard to her §1981 claims, Plaintiff also fails to specifically establish a claim of retaliation under §1981. "Retaliation claims are also cognizable under 42 U.S.C. §1981 and are analyzed under the same framework as Title VII claims." Gogel v. Kia Motors Mfg. of Georgia, Inc., 967 F.3d 1121, 1134 (11th Cir. 2020). "To make a *prima facie* case for a claim of retaliation under Title VII, a plaintiff must first show (1) that 'she engaged in statutorily protected activity,' (2) that 'she suffered an adverse action,' and (3) 'that the adverse action was causally related to the protected activity.' " Id. Once a plaintiff

7

makes a *prima facie* case, the burden shifts to the defendant to offer a non-discriminatory reason for the adverse action. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-803 (1973).

It is true that "[t]he prima facie case under *McDonnell Douglas* ... is an evidentiary standard, not a pleading requirement[,]" a Title VII plaintiff need not plead a *prima facie* case in order to survive a motion to dismiss. Swierkiewicz v. Sorema N. A., 534 U.S. 506, 510 (2002). "Nevertheless, a Title VII plaintiff, like any other plaintiff, must still satisfy the plausibility standard set forth in Twombly and Iqbal." Horace v. ARIA, No. 23-12414, 2024 WL 1174398, at *4 (11th Cir. Mar. 19, 2024). Further, "[t]o state a race-discrimination claim under Title VII, a complaint need only 'provide enough factual matter (taken as true) to suggest intentional race discrimination." Surtain v. Hamlin Terrace Found., 789 F.3d 1239, 1246 (11th Cir. 2015). This standard likewise applies to Title VII, and by extension, §1981 retaliation claims. Ilegbusi v. Univ. of Miami, No. 24-24069-CIV, 2025 WL 2531824, at *3 (S.D. Fla. Sept. 3, 2025)

Statutorily protected activity under Title VII "includes (1) 'oppos[ing] any practice made an unlawful employment practice by' Title VII and (2) 'mak[ing] a charge, testif[ying], assist[ing], or participat[ing] in any manner in an investigation, proceeding, or hearing' under Title VII." Smith v. Greensboro, 647 F. App'x 976, 983 (11th Cir. 2016) (quoting 42 U.S.C. § 2000e-3(a)). Thus, a Title VII plaintiff has two avenues to show that she engaged in statutorily protected activity: the "opposition clause" and the "participation clause." Id. To establish the first element, a plaintiff must show that he "had a good faith, reasonable belief that the employer was engaged in unlawful employment practices." Hawk v. Atlanta Peach Movers, 469 F. App'x 783, 785 (11th Cir. 2012) (quoting Weeks v. Harden Mfg. Corp., 291 F.3d 1307, 1311–13 (11th Cir. 2002)) (quotation omitted). "It is 'not enough for a plaintiff to allege that [her] belief in this regard was honest and bona fide; the allegations and record must also indicate that the belief, though perhaps

mistaken, was objectively reasonable.'" Id. (quoting Weeks, 291 F.3d at 1312).  The analysis of whether or not Plaintiff's "opposition" was based on a good faith and reasonable belief that the School Board was engaged in unlawful employment practices is impossible without knowing what protected activity Plaintiff claims to have engaged in.

The only references to protected activity described by Plaintiff in her First Amended Complaint are contained in Paragraphs 23 and 33.  In Paragraph 23, Plaintiff lists adverse employment actions she claims were taken against her then summarily concludes, with zero factual support, that these things occurred, "…all in retaliation for opposing discriminatory practices."  In Paragraph 33, Plaintiff alleges, "Plaintiff engaged in protected activity by opposing discriminatory employment practices, requesting promotions, appealing transfers, and seeking equitable treatment."  In its previous Order, the Court correctly concluded these mere allusions to "protected activity" without any specific facts to substantiate them were not enough to plead a viable claim. [DE 16, p. 7].  In her Second Amended Complaint, Plaintiff fails to describe her claimed "protected activity" with any more clarity or specificity.  In Paragraph 54 of the Second Amended Complaint, Plaintiff alleges,

> "Plaintiff engaged in constitutionally protected activity when she opposed and complained about discriminatory practices, including:
>
> a. Appealing her involuntary transfer;
>
> b. Objecting to disparate treatment regarding DROP extensions and promotions;
>
> c. Requesting intervention from the Superintendent;
>
> d. Seeking records through her union representative to expose discriminatory practices."

Essentially, all Plaintiff has done is reformatted her same glib allegations.  In a conclusory fashion, she once again brands these actions as, "constitutionally protected activity."  This is not enough.  A plaintiff's complaint must provide "more than labels and conclusions."  See Bell

9

Atlantic Corp. v. Twombly 550 U.S. at 555 (internal citations and quotations omitted). "[A] formulaic recitation of the elements of a cause of action will not do." Id. Rather, to survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead sufficient facts in her complaint to state a claim that is "plausible on its face." See Ashcroft v. Iqbal, 556 U.S. at 678.

Plaintiff must allege that she opposed discrimination made unlawful by statute, not simply that she protested that she was being treated unfairly. See Jeronimus v. Polk Cnty. Opportunity Council, Inc., 145 F. App'x 319, 326 (11th Cir. 2005) (per curiam) (unpublished) (finding that plaintiff's email complaining of being "singled out, being subjected to a campaign of harassment, and working in a hostile environment," did not "amount to protected conduct," since plaintiff "never suggested that this treatment was in any way related to his race"); Black v. Reynolds, 150 F. Supp. 3d 1273, 1281 (S.D. Ala. 2015) (finding plaintiff's email complaining of bullying and harassment did not constitute statutorily protected activity since it failed to mention that the conduct was based on a protected characteristic "as opposed to, say, a personal dislike," and explaining that "[s]imply complaining that one [felt] 'picked on' [would] not suffice") (citation omitted), aff'd, 674 F. App'x 851 (11th Cir. 2016) (per curiam) (unpublished); White v. Atlanta Indep. Sch. Sys., No. 21-cv-02614, 2023 WL 9693264, at *16–17 (N.D. Ga. 2023) (finding that plaintiff employee's two grievances were not statutorily protected activity where they "never referenced discrimination on the basis of a protected classification or retaliation for suggesting [such discrimination]"); Hawk, 469 F. App'x at 785–86 (finding complaint that employer "acted unfairly towards" plaintiff was not statutorily protected activity because nothing in the complaint "suggested that [the employer] was discriminating against [plaintiff] based on a protected ground"); Schultz v. City of Hapeville, No. 08-cv-3222, 2010 WL 11493296, at *11 (N.D. Ga. Jan. 15, 2010) ("[I]t is not enough for a plaintiff to show that [she] opposed garden-variety

unfairness or harsh treatment in the workplace; [she] is only protected from retaliation if the practice [she] opposed or complained about is specifically prohibited by Title VII."); Ingram v. Sec'y of the Army, 743 F. App'x 914, 918 (11th Cir. 2018) (finding no statutorily protected activity where emails complaining of a work conflict did not suggest the conflict was motivated by racial animus); Williams v. Gallup, Inc., 709 F. App'x 567, 572 (11th Cir. 2017) (notwithstanding that Title VII protection "extends to informal complaints as well [as formal complaints]," plaintiff communicated only "that he was being treated 'differently' without explaining that he meant he was being discriminated against"); Wooden v. Dolgencorp, LLC, No. 21-cv-46, 2022 WL 1750048, at *5 (N.D. Fla. May 11, 2022) ("[T]o be protected by Title VII's anti-retaliation provision, communications with management must be acts of opposition to prohibited discrimination.").

As an example of the deficiency in Plaintiff's pleading, in subpart (a) of Paragraph 54 of her Amended Complaint, Plaintiff alleges that she appealed her involuntary transfer. Appealing a transfer alone does not render it protected activity. Telling your supervisor, "Hey, I don't want to be transferred" is not enough. To the contrary, if Plaintiff objected to the involuntary transfer on the ground that she believed she was being transferred because she was black or a woman, that would be sufficient. It is that simple, yet we are now three iterations into pleadings from Plaintiff, and we still do not have any information on what made these alleged objections protected. This same deficiency is present for the other subparts of Paragraph 54. To be sure, the Court explicitly explained this to the Plaintiff in its prior Order. Moreover, the Court noted that this should be easy to rectify since the Plaintiff herself should have the requisite knowledge to flesh out the claim. [DE 16, p. 7]. It would be entirely reasonable to infer at this point that Plaintiff is not pleading it, because she cannot without fabricating facts. Instead, the Second Amended Complaint, while

longer and slightly more detailed (including several facts neither the Defendant argued for or the Court mandated) still contains a retaliation claim that suffers from unfixable deficiencies and must be dismissed.

### C. Plaintiff has Not Plead a Viable Hostile Work Environment Claim

Title VII and § 1981 hostile work environment claims have the same elements and are subject to the same analytical framework. See Shields v. Fort James Corp., 305 F.3d 1280, 1282 & n. 2 (11th Cir.2002). As stated by the Eleventh Circuit, to plead a hostile work environment claim the plaintiff is "required to allege that: (1) he belongs to a protected group; (2) he was subjected to unwelcome harassment; (3) the harassment was based on his membership in the protected group; (4) it was severe or pervasive enough to alter the terms and conditions of employment and create a hostile or abusive working environment; and (5) the employer is responsible for that environment under a theory of either vicarious or direct liability." Edwards v. Prime, Inc., 602 F.3d 1276, 1300 (11th Cir.2010).

"A hostile work environment claim under Title VII is established upon proof that the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Miller v. Kenworth of Dothan, Inc., 277 F.3d 1269, 1275 (11th Cir.2002). "In evaluating the objective severity of the harassment, we consider, among other factors: (1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's job performance." Id. at 1276. Moreover, "simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to

discriminatory changes in the terms and conditions of employment." Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998). In addition, "[t]he employee must present concrete evidence in the form of specific facts, not just conclusory allegations and assertions." Godoy v. Habersham County, 211 Fed.Appx. 850, 853–54 (11th Cir.2006) (citing Earley v. Champion Int'l Corp., 907 F.2d 1077, 1081 (11th Cir.1990)).

None of the above cases concern rulings made on a motion to dismiss. However, these holdings do shed substantial light on what a viable hostile work environment claim consists of. None of the characteristics of a hostile work environment case are even remotely described in either Plaintiff's Second Amended Complaint.  The only adverse treatment she describes at all, are the aforementioned "discrete" employment actions of: (1) a delayed salary adjustment in January 2022; (2) being denied an assistant superintendent position in April 2022; (3) being denied another assistant superintendent position in July 2022; (4) being laterally transferred on August 12, 2022; and (5) having her DROP extension denied in June 2024. These discrete incidents occurred months and/or years apart, were not threatening or humiliating, did not interfere with Plaintiff's job performance and were certainly not severe and pervasive in the manner necessary to constitute a hostile working environment.

> "*Hostile environment claims are different in kind from discrete acts*. Their very nature involves repeated conduct. The "unlawful employment practice" therefore cannot be said to occur on any particular day. It occurs over a series of days or perhaps years and, in direct contrast to discrete acts, a single act of harassment may not be actionable on its own. Such claims are based on the cumulative effect of individual acts."
>
> Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 115 (2002). (citations omitted) (*emphasis added*).

As such, the "discrete acts" alleged by Plaintiff cannot form the basis of a hostile work environment claim.  She mentions no other harassment of any kind in her Second Amended

Complaint. As this third iteration of Plaintiff's Complaint is deficient as to what facts created a hostile environment, she cannot sustain a claim based on a hostile work environment and her claim must be dismissed with prejudice.

**V.      CONCLUSION**

Based on the foregoing, Plaintiff's Second Amended Complaint:

(a) Fails to plead she was damaged by a policy or custom of the School Board and must be dismissed in its entirety with prejudice;

(b) Fails to adequately identify any protected activity and as such cannot form the basis for a viable retaliation claim and Count III must be dismissed with prejudice; and

(c) Fails to plead a hostile work environment and Count II must be dismissed with prejudice.

Respectfully submitted,

Walter J. Harvey, General Counsel
The School Board of Miami-Dade County, FL
1450 N.E. 2nd Avenue, Suite 430
Miami, Florida 33132

By: */s/ Christopher J. La Piano*
Christopher J. La Piano, Esq.
Associate General Counsel
Fla. Bar No. 0059157
cjlapiano@dadeschools.net
Telephone (305) 995-1304
Facsimile (305) 995-1412

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing was electronically served on February 11, 2026, upon: Anthony M. Georges-Pierre, Remer, Georges-Pierre, & Hoogerwoerd, PLLC., 2745 Ponce de Leon Blvd., Coral Gables, FL 33134; agp@rgph.law

                                              */s/ Christopher J. La Piano*
                                              Christopher J. La Piano, Esq